Filed 5/17/13  P. v. Sands CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047159 |
| v. | (Super. Ct. No. 11CF2061) |
| MICHAEL LAURENCE SANDS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kevin Vienna and Heidi T. Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

**INTRODUCTION**

Defendant Michael Laurence Sands appeals from the judgment entered after a jury found him guilty of two counts of carjacking, two counts of second degree robbery, two counts of assault with a semiautomatic firearm, and one count of making criminal threats. The jury also found Sands personally used a firearm in the commission of each of those offenses. Sands argues his convictions for assault with a semiautomatic firearm must be reversed because the trial court erred by failing to instruct the jury that it must find the semiautomatic firearm that he used was loaded.

We affirm. The trial court properly instructed the jury with CALCRIM No. 875 on the offense of assault with a semiautomatic firearm. That instruction accurately informed the jury that before finding Sands guilty of assault with a semiautomatic firearm, it must find that at the time Sands acted, "he had the present ability to apply force with a semiautomatic firearm to a person." Sands did not request that the trial court provide any further clarification to the jury and thus forfeited the argument that such clarification was required. Sands concedes substantial evidence supported the reasonable inference the semiautomatic firearm was loaded at the time of the offenses. We find no error.

**FACTS**

In July 2011, Matthew Stingley was employed by Seven Star Recovery Services as a field repossession agent. Around 6:30 p.m. on July 24, Stingley was driving through a mall parking lot, scanning license plates in search of "delinquent cars." When the license plate of a parked blue Honda was scanned, the alert on the computer system in Stingley's car sounded. Stingley called the finance company connected to that car, and obtained an order to repossess it. Stingley called his partner, Brian Mason, who then drove a tow truck to the mall parking lot to recover the car.

2

After Stingley and Mason applied "go jacks" to the car, Stingley saw Sands running through the parking structure toward them. Stingley told Mason, who had already broken into the car, "I think our R.O. [(registered owner)] is coming out." Mason jumped into the car through the front passenger door and then moved over into the driver's seat. Sands ran around Stingley, opened the driver's side door, and almost sat on Mason as Sands tried to put the keys in the ignition. Mason grabbed Sands's hands and tried to stop him from starting the car. Stingley successfully pulled Sands out of the car; Mason remained sitting in the driver's seat.

Sands stepped back, pulled out a pocketknife from his pocket, and "flip[ped] it out" but held it down at his side. Stingley told Mason that the "R.O." pulled out a knife. Stingley asked Sands, "are you really going to pull a knife out on me?" Sands "kind of stepped back," looked at Stingley, and appeared to calm down. Stingley testified Sands "put the knife even further back down at his side, and then proceeded to ask [Stingley] if he could get his stuff out of his car." Stingley said Sands could "get his stuff."

Sands reached into a bag in the trunk, pulled out a semiautomatic handgun (which he "pull[ed] . . . down to his side"), and said to Stingley, "get the fuck away from my car." Stingley backed up from the car and told Mason that Sands had a gun. Sands approached Mason, who was still sitting in the driver's seat, and pointed the gun at Mason's face. Mason testified Sands "told me to get the fuck out of the vehicle or he was going to fucking shoot me." Mason got out of the car and told Sands that he would get his stuff out of the passenger side of the car. Sands said, "okay. Fine." Mason picked up his sunglasses and a tool, and closed the door.

Sands started the car and punched the accelerator three times before the car was free of the go jacks. He backed out of the parking structure in reverse. Mason got into his truck and followed Sands before losing sight of him on a freeway. Sands was arrested on August 2, 2011.

3

## PROCEDURAL BACKGROUND

Sands was charged in an amended information with two counts of carjacking in violation of Penal Code section 215, subdivision (a) (counts 1 and 2); two counts of second degree robbery in violation of Penal Code sections 211 and 212.5, subdivision (c) (counts 3 and 4); two counts of assault with a semiautomatic firearm in violation of Penal Code section 245, subdivision (b) (counts 5 and 6); and two counts of making criminal threats in violation of Penal Code section 422 (counts 7 and 8).[1]  (All further statutory references are to the Penal Code.)  The information contained multiple prior conviction allegations, and also alleged that Sands personally used a firearm in the commission of the carjacking and second degree robbery offenses pursuant to section 12022.53, subdivision (b) and within the meaning of sections 1192.7 and 667.5. The information further alleged that pursuant to section 12022.5, subdivision (a) and within the meaning of sections 1192.7 and 667.5, Sands personally used a firearm in the commission of the criminal threats offenses.

The jury found Sands guilty as charged in the amended information of all counts but count 7.  The jury found true the personal use of a firearm enhancement alleged as to counts 1, 2, 3, 4, and 8.

The trial court sentenced Sands to a total prison term of 13 years, by imposing the three-year low term for count 1 and a consecutive 10-year term for the personal use of a firearm enhancement as to count 1.  The court stayed execution of sentence on counts 2, 3, 4, 5, 6, and 8, under section 654.  The court struck the personal use of a firearm enhancement as to counts 2, 3, 4, and 8 for purposes of sentencing.

Sands appealed.

---

[1]  The amended information included two misdemeanor counts of brandishing a firearm capable of being concealed upon the person in a public place in violation of Penal Code section 417, subdivision (a)(2)(A).  The trial court granted the prosecution's motion to dismiss those two counts.

DISCUSSION

The offense of assault with a semiautomatic firearm is codified at section 245, subdivision (b), which provides: "Any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years." Section 240 defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

Here, the trial court instructed the jury on the offense of assault with a semiautomatic firearm with CALCRIM No. 875, without any objection by Sands or the prosecution, as follows: "The defendant is charged in Counts 5 and 6 with assault with a semiautomatic firearm in violation of Penal Code section 245(b). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] 4. *When the defendant acted, he had the present ability to apply force with a semiautomatic firearm to a person.* . . . [¶] Someone commits an act willfully when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage. [¶] The terms application of force and apply force mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] The touching can be done indirectly by causing an object to touch the other person. [¶] The People are not required to prove that the defendant

5

actually touched someone.  [¶] The People are not required to prove that the defendant actually intended to use force against someone when he acted.  [¶] No one needs to actually have been injured by defendant's act.  But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so what kind of assault it was.  [¶] A firearm is any device designed to be used as a weapon, from which a projectile is discharged or expelled through a barrel by the force of an explosion or other form of combustion.  [¶] A semiautomatic pistol extracts a fired cartridge and chambers a fresh cartridge with each single pull of the trigger."  (Italics added.)

CALCRIM No. 875, as given to the jury here, accurately tracks the language of sections 240 and 245, subdivision (b); Sands does not argue otherwise. Citing *People v. Rodriguez* (1999) 20 Cal.4th 1 (*Rodriguez*), Sands contends that the crime of assault with a semiautomatic firearm in violation of section 245, subdivision (b), however, "requires proof that the firearm was loaded" and that the trial court erred by failing to instruct the jury accordingly.

In *People v. Miceli* (2002) 104 Cal.App.4th 256, 268 (*Miceli*), the appellate court explained: "[T]he offense of assault with a semiautomatic firearm does not require proof that the weapon was operable as a semiautomatic firearm (i.e., loaded); the crime may also be committed by using the weapon as a bludgeon."  The *Miceli* court stated, "nothing in section 245, subdivision (b), or in any apposite case law, indicates that assault with a semiautomatic weapon requires proof the gun was operable as a semiautomatic at the time of the assault.  A person may commit an assault under the statute by using the gun as a club or bludgeon, regardless of whether he could also have fired it in a semiautomatic manner at that moment.  [Citations.]  [¶] 'A firearm does not cease to be a firearm when it is unloaded or inoperable.'  [Citation.]  This applies to semiautomatic firearms as well as any other kind.  When a clip is removed from a semiautomatic

6

firearm, the firearm does not suddenly become a billy club, a stick, or a duck. [¶] Furthermore, section 245, subdivision (b), does not say, 'assault with a *loaded* semiautomatic firearm'—it says simply, 'assault . . . with a semiautomatic firearm.' By contrast, numerous provisions in the Penal Code plainly require that a firearm be loaded as an element of an offense or a prerequisite to a specific sentence. . . . [¶] Thus the Legislature knows how to specify that a firearm must be loaded in order for a criminal statute to apply. It did not so specify in section 245, subdivision (b)." (*Miceli*, *supra*, at p. 270.) Sands does not cite any legal authority showing that assault with a semiautomatic firearm necessarily involves a loaded firearm.

In a footnote in *Rodriguez*, *supra*, 20 Cal.4th at page 11, footnote 3, the California Supreme Court acknowledged, "[a] long line of California decisions holds that an assault is not committed by a person's merely pointing an (unloaded) gun in a threatening manner at another person." The Supreme Court in *Rodriguez*, however, did not address "[t]he continuing viability of this rule" because it was not questioned in that case. (*Ibid.*) In *People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 542, footnote 10, the appellate court called the rule an "anachronism" that the Supreme Court should reexamine and discard.[2] Thus, *Rodriguez* does not support Sands's proposition that assault with a semiautomatic firearm in violation of section 245, subdivision (b) can only be accomplished with a loaded firearm; Sands does not cite to any other case that supports his position.

---

[2] In *People v. Lochtefeld*, *supra*, 77 Cal.App.4th at page 542, footnote 10, the appellate court stated: "This 'operability' requirement is an anachronism which is incompatible with the realities of a society in which the unlawful use of guns is a major and continuing problem, and in light of the fact [citation] that both replica guns and real but unloaded or otherwise inoperable guns pose to those threatened with them . . . an identical sense of dread as does a loaded gun, as well as raising an identical likelihood of a deadly response . . . , we urge our Supreme Court not only to reexamine the continuing viability of this rule, which cannot serve any valid societal function, but to discard it."

In any event, under the instruction given, the jury had to find that Sands had the "present ability to apply force with a semiautomatic firearm to a person." To the extent Sands argues that the trial court should have further defined the "present ability" element contained in CALCRIM No. 875 to require a loaded semiautomatic firearm, in light of the absence of any evidence that Sands used or attempted to use the firearm as a bludgeon-type weapon, any such argument is forfeited due to his failure to object to the instruction or request further clarification of it by the trial court. In *People v. Whalen* (2013) 56 Cal.4th 1, 81-82, the California Supreme Court stated, "'[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal.'"

Furthermore, Sands concedes substantial evidence supports the reasonable inference that his semiautomatic firearm was indeed loaded. Sands's conduct of retrieving the semiautomatic firearm from the trunk and telling Stingley to "get the fuck away from my car," and Mason to "get the fuck out of the vehicle" or he would shoot Mason, supports the inference that Sands stood before Stingley and Mason ready to fire a fully operable and loaded semiautomatic firearm unless they cooperated with his demands. (*Rodriguez*, *supra*, 20 Cal.4th at p. 13 ["A defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a loaded weapon"].) In his opening brief, Sands states he "concedes that jurors could have inferred that the firearm was loaded." He does not otherwise mount any substantial evidence to challenge his convictions.

We find no error.

**DISPOSITION**

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.